### Delia Maxey v. The State.

#### No. 296.   Decided January 26, 1910.

**1.—Theft from the Person—Evidence—Conversation.**

Where upon trial of theft from the person, defendant's statement as to who gave her certain money and the contradiction of said statement by the person named, having been admitted to the jury, it was reversible error not to have admitted *in explanation of this statement* by the defendant the entire conversation which she had had with reference to said money, and her explanation of said contradiction. Following Pratt v. State, 53 Texas Crim. Rep., 281.

**2.—Same—Insufficiency of the Evidence—Description of Money.**

Where the indictment alleged that defendant stole a $5 gold piece of the United States currency, and there was no proof that the alleged $5 gold piece was money of the United States, the conviction could not be sustained.

Appeal from the District Court of Shelby.  Tried below before the Hon. James I. Perkins.

Appeal from a conviction of theft from a person; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*John A. Mobley,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of theft from the person of Edmond Pilot.

Pilot testified that he was at the residence of Alex Maxey, father of appellànt, on Sunday. That he engaged with other parties who were present in pitching dollars at some holes in the ground. Four parties were engaged in this pitching of the dollars. He also testified not having a sufficient number of dollars he borrowed one from the mother of appellant. When the game was over he returned this dollar to appellant's mother. Shortly afterward they had dinner, and after dinner Pilot, Dalton Jones, and perhaps one or more other persons were sitting on the front gallery. Pilot was sitting on the east end of the gallery, and appellant was either lying down or sitting on a pallet just behind Pilot. Dalton Jones, a white man, was sitting about four or five feet from Pilot and appellant. While sitting there a general conversation was carried on. Pilot testifies that he had a pocketbook closed by a clasp, that he heard it click, looked around and found appellant with the pocketbook trying to return it to his hip pocket. He took it away from her and himself placed it in his pocket, and paid no further attention to the matter. That appellant got up immediately and went away. As she went away he says her right hand was closed; that she went to Mr. Hall's, a neighbor nearby, and returned and told her father, Alex Maxey, that Mr. Hall wanted him to go for some watermelons, and would furnish the money for the purpose of paying for the melons. Shortly after this statement appellant, her father and Pilot left her father's residence, and traveled together some forty yards, where they separated, one taking the right hand road, and the other the left hand, appellant accompanying her father. That it then occurred to him, Pilot, to look at his pocketbook, which he did, and found that the five dollar gold piece was gone. That he went on home; that the other parties came to his house later, but he did not see them as he had gone to sleep. This was in the daytime. He further testified he went to the residence of Alex Maxey, appellant's father, early the next morning, which was Monday, and mentioned the matter of having lost a five dollar gold piece, and Alex Maxey called his daughter, appellant, and said something about it; she neither admitted nor denied that she got it, but went on to the cow pen to milk the cows. He says he has never recovered his five dollars. He also stated that at the time they began pitching the dollars he had some silver dollars in his pocketbook with the five dollar gold piece, which he took out while in the yard to be used in pitching at the game they were playing; that when the game was over he put his silver dollars in his vest pocket, and did not return them to the pocketbook. This is the substance of the prosecuting witness' testimony. Mr. Dalton Jones, a white man, who is mentioned as being a highly respectable man, was at the residence of Alex Maxey, who was a negro, for the purpose of hiring Alex

Maxey to do some work for him the next day; that he reached the residence of Alex Maxey after dinner. After staying there a while and talking to Alex Maxey with reference to the object of his visit, he returned home about a half mile distant. He placed himself on the east end of the gallery four or five feet from where appellant and Edmond Pilot were sitting. He says he noticed the girl reach towards the pocket of Edmond Pilot and was pulling the pocketbook out when Edmond Pilot reached around and got it, and that the girl did not open the pocketbook; that when she reached for it she looked at him, the witness, and smiled; that when the pocketbook was taken by Edmond Pilot or pushed back into his pocket they laughed about it and treated it as a joke. He excludes the idea that the girl got the money out of the pocketbook at the time. Both Pilot and the witness Jones agree that there was but one attempt to get the pocketbook. This is practically the evidence in regard to appellant's connection with the pocketbook as shown by the testimony of both sides. Alex Maxey testified that Pilot came to his house on Monday morning and worked for him during the day, and did not say anything about having lost his five dollars or mention the subject. But on Tuesday morning Pilot returned and called his, witness', attention to the fact that he had lost a five dollar gold piece, and thought his daughter had gotten it. She was called up and asked about it, and denied taking it. Pilot stated that he had missed it and thought maybe she got it, but this she emphatically denied. On cross-examination of this witness the State was permitted, over appellant's objection, to prove that he, a few days after this occurrence, had a conversation with one Brown, another negro, in which he told Brown that in talking with his daughter, appellant, she told him she had $2.50 in silver which had been sent her by Will McGee. The court says he withdrew the conversation with Brown and permitted the evidence to go before the jury that appellant stated to the witness she had received the money; that McGee sent her $2.50. This occurred a few days after the alleged taking. On redirect-examination appellant undertook to go into this conversation, but this was excluded on the ground that the court had withdrawn from the jury the fact that the witness had told Brown that appellant had stated she had gotten the $2.50 from McGee, but permitted the statement of appellant to the witness to remain before the jury. It also developed that appellant had had another conversation just after the other with this witness with reference to the $2.50. Appellant undertook to prove her statement in this conversation in regard to the $2.50, and this was excluded on the ground that it was self-serving, and was not a part of the original conversation between Alex Maxey and his daughter. It was proposed to be shown by the witness that in the second conversation appellant told her father her mother, witness' wife, had given her the $2.50, and the reason she made the former statement to her father was under her mother's instructions, because the father always raised trouble and fussed at appellant a great deal when he discovered the fact

that she had money. This was excluded over the objection of appellant. The mother of appellant testified that she had loaned Edmond Pilot the dollar on Sunday with which to pitch at the holes in the ground; that this dollar was part of the money she had given her daughter, appellant. That when the game was over witness Pilot returned the dollar she had loaned him. She also testified that she instructed her daughter to tell her father that she had gotten the money from Will McGee, because the father always created a disturbance and fussed at the daughter a great deal when he discovered that she had money, and that it would result in family troubles between herself and her husband, and she wished to avoid that. She assigns this as a reason she instructed her daughter to tell her father this story in regard to Will McGee. Appellant took the stand and testified that she did not take the five dollar gold piece or any other money from prosecuting witness' pocketbook, and she did not open the pocketbook. The substance of her testimony in regard to her taking the pocketbook was practically as the witness Jones, at least substantially so. Will McGee testified that he did not send or give appellant any money. This is practically the case as disclosed by the statement of facts.

1. On redirect examination appellant asked the following question: "Now, you have stated that appellant told you that Will McGee had sent her two dollars and fifty cents; we will now ask you what else she told you about where she got the $2.50, about which you had been questioning her, and why she had told you that Will McGee had sent it to her." The answer would have been, had the witness been permitted to testify, which she was not, that defendant's mother gave appellant the $2.50, and that her mother told her to tell this witness that Will McGee sent it to her, for the reason that this witness, who was the father of defendant and the husband of defendant's mother, fussed at defendant's mother every time she gave this defendant any money; and that said witness would have further testified that defendant told him that her mother gave her the money to pay a doctor's bill. The court qualifies this bill by stating that he thought, trusting to his memory, that the statement of facts would show that this question called for another and different conversation occurring subsequent to that called forth by the State and was, therefore, hearsay and self-serving; but again refers to the statement of facts. Having permitted the introduction of the first statement, to wit: that in which appellant told the witness she had received the money from McGee, we are of opinion this conversation should have been permitted to go to the jury. It was in relation to the same matter and explanatory of the first conversation. We are of opinion that this comes directly within the rule laid down by this court in Pratt v. State, 53 Texas Crim. Rep., 281, wherein Judge Ramsey, in a well considered opinion, reviewed this character of question. Having introduced the first statement, we believe, under the statute, which was construed fully in the Pratt case, supra, the other conversation should have been permitted to go to the

jury as explanatory of the first. This, we think, is emphasized by the fact that Will McGee was permitted, over appellant's objection, to testify that he had not sent or given appellant any money.

2. It is contended the evidence is insufficient to support the conviction. The indictment charged appellant with taking the five dollar gold piece of the United States currency. There is not any evidence in the record from any witness that it was United States money. The witness Pilot said it was a five dollar gold piece, and no witness anywhere testified to the fact that it was money of the United States. Having alleged this fact, the evidence should have corresponded and shown that it was United States money.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*