### Charles Winkler v. The State.

#### No. 463. Decided March 30, 1910.

**1.—Burglary.—Evidence, Materiality of.**

Where, upon trial for burglary, the State attempted to show that some of the alleged stolen money was returned to the owner and that the defendant directed a State's witness where to get said money, such testimony was not admissible unless the defendant could be connected with it.

**2.—Same—Charge of Court—Day and Night Burglary—Force.**

Where, upon trial for burglary, the court submitted the case to the jury upon the theory of a breaking, and instructed them that if the breaking occurred in the night-time or the daytime, and that thereby defendant entered the house and took the money he would be guilty, without applying the question of force, which was raised by the evidence, the same was reversible error.

**3.—Same—Charge of Court—Want of Consent.**

Where the State relied upon circumstances to show a breaking, and the evidence was not clear as to whether the house was entered at night or in the daytime, and the charge of the court omitted the question of force, and practically instructed the jury that any entry of the house would constitute burglary if done without consent of the occupant, the same was reversible error.

**4.—Same—Charge of Court—Confessions—Aperture.**

Where, upon trial for burglary, the State introduced the confession of the defendant which among other things showed that he did not open the window of the house, but that he found it open, and reached in and took the money through the open window, the court should have charged the jury that if this was the case and the opening was not made by the defendant, to acquit him. Following Pratt v. State, 53 Texas Crim. Rep., 281, and other cases.

**5.—Same—Evidence—Opinion of Witness.**

Upon trial of burglary it was reversible error to permit one of the owners of the alleged property to testify that she and her husband were the only parties who knew there was gold in the house; this was simply a conclusion of the witness.

**6.—Same—Charge of Court—Theft—Felony.**

Where the indictment charged burglary with the intent to commit the crime of theft, it was error in the court's charge in defining burglary that the offense consisted in entering the house, etc., with the intent to commit a felony or the crime of theft.

Appeal from the District Court of Medina. Tried below before the Hon. R. H. Burney.

Appeal from a conviction of burglary; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*De Montel & Fly, John R. Storms* and *James H. Robertson,* for appellant.—On question of the court's charge on entry: Bates v. State, 50 Texas Crim. Rep., 568; Newman v. State, 55 Texas Crim. Rep., 273, 116 S. W. Rep., 577.

On question of the court's charge in failing to instruct the jury on question of force, etc.: Brown v. State, 1 Texas Crim. App., 154; Spear v. State, 4 Texas Crim. App., 474; Hill v. State, 11 Texas Crim. App., 132; Willard v. State, 27 Texas Crim. App., 386; Brady v. State, 32 Texas Crim. Rep., 264; Dunn v. State, 34 Texas Crim. Rep., 257; Attaway v. State, 35 Texas Crim. Rep., 403; Nicks v. State, 40 Texas Crim. Rep., 1; Tidwell v. State, 40 Texas Crim. Rep., 38; White v. State, 40 Texas Crim. Rep., 366; Bailey v. State, 42 Texas Crim. Rep., 289, 59 S. W. Rep., 900.

*John A. Mobley,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of burglary with intent to commit the crime of theft, his punishment being assessed at two years confinement in the penitentiary.

The evidence in brief shows that the alleged owner Graff and his wife, a very aged couple, had placed in a smokehouse about thirty-five or forty yards from their residence, in a stove, quite a lot of gold, consisting of five, ten and twenty dollar gold pieces. Subsequent to the alleged burglary, and prior to the trial, Mr. Graff died. His widow testified on the trial that the house was closed. The evidence is not very clear when the house was broken and the money taken, that is, whether in the daytime or at night. The first that Mrs. Graff noticed in regard to the matter was that she discovered it open one morning. Her son testified that about the time of the alleged burglary appellant was at his house, and went from there in the direction of where his father and mother lived. This was in the evening, in daytime. The State, through the witness Schuehle, introduced the statement or confession of appellant as follows: "I had several conversations with him, once or twice with him in regard to the burglary at Mr. Graff's; he told me he never broke into the house; he said it was open, the shutter, and he went there and got the money and rode off." Again, the same witness states, referring to his conversation with appellant: "He told me he rode up there and the window was open and he reached in there and got the money; it was right next to the opening." The record further discloses that appellant was tried for the theft of the money and acquitted. It is also shown by the sheriff that appellant gave him money to be given to the alleged owner. It may be further stated that there is evidence showing the shutter to the window of the house burglarized had been forcibly opened, but it is not undertaken, except by circumstances, to show that appellant had anything to do with the opening, that is, there is no direct testimony in regard to that matter.

1. Appellant reserved a bill of exceptions which recites that the State, over appellant's objection, was permitted to ask the witness Schuehle, after he had stated that he had gone to San Antonio and got a sack of money, the following question: "Where did you get it?" meaning the money gotten in San Antonio. Appellant urged a great number of objections from almost every imaginable standpoint to the witness being permitted to answer this question, and the court, hearing the objections, allowed it to be answered as follows: "I got seventy dollars from Jack Hoefgen; I got four hundred and twenty dollars from Fred Haller, all twenty dollar gold pieces; I got one hundred and some odd dollars from the American Trust Company, and the whole amount was six hundred dollars, six hundred and some odd dollars. I did not see either of the Heinens; they had deposited the money in the bank. I saw Fredericks and Hoecke and got some money from the American Trust Co. The money was gold, mostly ten and twenty dollar gold pieces. I had a conversation with Winkler about

where I got the money at Mr. Harris' office. I turned the money over
to Mr. Ney. Mr. Winkler did not know what I was going to do with
the money. Defendant did not know to my own knowledge that
Winkler knew what became of the money. I only know from hearsay."
The objections were overruled, and this testimony went to the jury.
The court approves the bill with the explanation: "The evidence
shows that the defendant went to San Antonio about the time of the
alleged burglary, and gave and paid out to various parties sums of money,
same being gold; and, further, the said witness stated that he had a
conversation with the defendant about this money and where he had
gotten it, and that he turned it over to Sheriff Ney, and Ney testified
that with the knowledge and consent of the defendant that he turned
all this money, with some six hundred dollars that defendant went
and brought to him as part of old man Graff's money, over to said
Graff, Sr., the alleged owner, by direction of defendant." Appellant
objected on the ground that there was no connection shown between
the testimony the witness was about to give and the defendant, and
that same was immaterial, and that defendant was not present when
witness secured the money, and not connected with it, and it was
not shown that it was money taken from the house of Louis Graff, Sr.,
and the acts of others, and not of the defendant, and that the money
was never seen by this defendant, and the court, after hearing said
objections, allowed said question to be answered, as above stated. This
bill leaves the matters mentioned in a very confused condition, ren-
dering it difficult to understand just how the matters occurred. If
the witness Schuehle went to San Antonio at the direction of appel-
lant, or upon information received from appellant as to where the
money was in San Antonio and the parties to whom he, appellant,
paid it, if he in fact did pay it or deposit it, then it would be per-
missible to show this to the jury, as it would tend to connect appel-
lant with the money obtained by the witness Schuehle in San Antonio.
While the particulars of the matters occurring in San Antonio be-
tween Schuehle and the parties from whom he obtained the money,
under those circumstances, would be immaterial, yet if Schuehle ob-
tained the money on information of appellant or by his direction and
returned with it to Medina County and turned it over to the sheriff,
and it was by the sheriff given to the alleged owner, these facts and
circumstances would be admissible. Upon another trial, if this testi-
mony is sought to be introduced, and the witness Schuehle is able to
connect appellant with his, witness', visit to San Antonio and the ob-
taining of the money at that point, and this is shown, then the testi-
mony complained of in the bill would be admissible.

2. Objections were urged to the charge of the court as well as the
refusal to give special requested instructions. The court submitted
the case to the jury upon the theory of a breaking, and instructed
them that if the breaking occurred either in the night-time, or in the
daytime, and thereby appellant entered the house and took the money,

he would be guilty. The question of force was not given in applying the law to the facts. The court also charged the jury that the term entry into a house, as used in the definition of the offense of burglary, includes every kind of entry, but one made by the free consent of the occupant or of one authorized to give such consent, and it is not necessary that there should be any actual breaking to constitute the offense of burglary, except when the entry is made in the daytime. It will be observed the State relied upon circumstances to show a breaking, and the evidence is not clear as to what time the house was entered and the money taken, whether day or night. The charge omitted the question of force and practically told the jury any entry of the house would constitute burglary if without consent of the occupant. As given this charge was error. It will be also noted that the State put in the statements of appellant, or the confession, as they may be termed, to the effect that the window was open, and that he did not open it, but reached in the house and took the money out through the open window. In other words, that he did not break and enter the house but found the window open and secured the money. To meet one of the phases of this case, appellant asked the following instruction: "You are instructed that to constitute the offense of burglary by the inserting of any part of the body of a person through an aperture or opening of a house that the said aperture or opening must have been made by the defendant for that purpose, therefore, you are instructed that if you believe from the evidence that the alleged taking of certain money by the defendant was made by him through a window or shutter, and that the aperture or opening therein was not made by the defendant for that purpose, then you will find the defendant not guilty as charged in the indictment." The State having introduced appellant's statement or confession, was bound by it, unless the statement or confession was proved false. See Pratt v. State, 53 Texas Crim. Rep., 281; Pharr v. State, 7 Texas Crim. App., 472; Combs v. State, 52 Texas Crim. Rep., 613. The requested charge should have been given. If appellant did not open the window he would not be guilty under the statute and his confession put this in issue. Again, the statute provides, article 842 of the Penal Code, by the term breaking as used in article 839, is meant that the entry must be made with actual force. The slightest force, however, is sufficient to constitute breaking; it may be by lifting the latch of the door that is shut, or by raising a window, the entry at a chimney, or other unusual place, the introduction of the hand, or any instrument to draw out the property through an aperture made by the offender for that purpose. It will be noticed also that the term "breaking" as used in article 839 of the Penal Code refers to a daytime breaking. If the house was broken in the daytime and the court submitted the daytime breaking to the jury in the general charge, then under the testimony introduced by the State appellant would not be guilty of taking the property through an aperture or open window, if

at the time he did so this opening had been made by someone else. In order to constitute him guilty, under the circumstances, of the offense of burglary, this aperture must have been made by himself. This charge was directly called for by the evidence introduced by the State. We, therefore, think the errors urged against the charge and the refusal to give the special instructions are well taken.

3. There are other questions suggested for revision. Mrs. Louis Graff, testifying for the State, was premitted to state that she and her husband were the only parties who knew there was gold in the smokehouse. Various objections were urged to this. We are of opinion these objections are well taken. While this testimony may not be of very serious import, yet it is the expression of a conclusion of the witness in regard to the matter, and can be but an opinion. Upon another trial we suggest this matter be avoided. Again, upon another trial the definition of burglary should be limited to the crime intended to be committed, which was theft. The charge in this respect defined burglary to be the breaking, etc., with intent to commit a *felony* or *the crime of theft*. The indictment charged the purpose of entering the house was to commit theft.

For the errors pointed out the judgment is reversed and the cause is remanded.

*Reversed and remanded.*