GEORGE MCKINLEY v. THE STATE.

No. 8920.    Delivered March 11, 1926.

Rehearing granted State April 14, 1926.

1.—Accomplice to Murder—Confession of Principal—Exculpatory Statements—State Bound By.

Appellant was charged as an accomplice of one Clem Gray, in the

murder of Ottis Ballard. The state introduced a confession of Gray, to establish that Gray killed Ballard. The state having introduced Gray's confession, as one of the means of convicting appellant, was bound by that part of the confession introduced by it, so far as it was exculpatory of Gray, unless the exculpatory part was disproved. See Pratt v. State, 53 Texas Crim. Rep., 281, and other cases cited.

### 2.—Same—Charge of Court—On Confession of Principal—Incorrect.

Ordinarily when the state introduces a confession of accused, containing exculpatory statements, it is incumbent on the court to instruct the jury that the exculpatory statements are to be regarded as true, unless disproved, and it was error for the court to charge in this case that the exculpatory statements in Gray's confession could only be considered by the jury in passing upon the question of the guilt or innocence of Gray, which precluded the jury from considering them for any purpose favorable to appellant.

### 3.—Same—Continued.

While this error in the court's charge would not be sufficient to require a reversal of the judgment under our pactice, the want of cogent testimony to establish the appellant's knowledge of Gray's intent to kill Ballard, and the charge above referred to in effect withdrawing from the jury any probative force in favor of appellant, of the exculpatory declarations of Gray introduced by the state, constrains us to apply toward the accused the force of such doubt, and order a reversal of the judgment.

### ON REHEARING BY STATE.

### 4.—Same—Confession of Principal—Not Binding on State—When Introduced by Accused.

On motion for rehearing by the state our attention is called to a mistake in our original opinion in holding that the state introduced all of the confession of appellant's principal, Clem Gray. That part of the confession of an exculpatory character was introduced by the appellant, and there was, therefore, no error in the refusal of the trial court to charge on the duty of the state to prove as untrue the exculpatory parts of said confession, asserted by us to have been introduced by the state.

### 5.—Same—Evidence—Held Sufficient.

A careful reconsideration of all the evidence in this case convinces us that the verdict was fully warranted by the facts. There is no question but that Clem Gray killed Ottis Ballard. Appellant brought about the meeting between Gray and Ballard, which resulted in Ballard's death. He unquestionably knew that Gray had a motive to get Ballard out of his way, and while appellant claimed that he did not know that it was Gray's purpose to kill Ballard, there are sufficient circumstances, together with appellant's acts and conduct before and after the killing, to justify the jury in finding that he did know, and aided Gray in his purpose. The reversal is, therefore, set aside and the cause affirmed.

Appeal from the District Court of Titus County. Tried plice to the offense of murder; punishment fixed at confinement below before the Hon. R. T. Wilkinson, Judge.

Appeal from a conviction for an accomplice to murder, penalty six years in the penitentiary.

Clem Gray, the principal, was convicted of the murder of Ottis Ballard, his case being reported in the 99 Texas Crim. Rep., 611.

The opinion states the case.

*S. P. Pounders* and *C. G. Engledow,* for appellant.

*T. C. Hutchings,* District Attorney, *Sam Williams,* County Attorney, Titus County, *Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

MORROW, PRESIDING JUDGE.—The conviction is for an accomplice to the offense of murder, punishment fixed at confinement in the penitentiary for a period of six years.

Ottis Ballard, a boy about seventeen years of age, was murdered. There is evidence sufficient to support the finding that the murder was committed by Clem Gray, a white man, and Burl Kemp, a negro. Kemp testified in substance that he and Gray made an agreement to kill Ballard, but that Gray struck the fatal blow in the absence of the appellant.

Gray's confession was introduced in evidence by the State. According to it, Gray sought an interview with Ottis Ballard in order that Ballard might be induced to leave the country so that his testimony might not be used against Gray on an indictment pending against both Gray and Ballard for an alleged felony. According to the confession, while Gray was talking to Ballard, the latter was killed by Kemp, and Gray and Kemp then hid the body in a lake. There were circumstances introduced corroborative of Kemp's testimony connecting Gray with the homicide. The evidence is clear that Gray had a motive for the homicide in that he was anxious to avoid the appearance of Ballard as a witness in the case mentioned. Evidence was introduced to the effect that Ballard was anxious to avoid testifying against Gray, and had said that he would not do so. There was also evidence that the father of Ballard was insistent that he should testify against Gray and not leave the country.

Ballard was killed on a Monday night. A short time before his death, he and several other boys, including the appellant, were at a school house and engaged in singing. They had some whiskey which they were drinking and which, according to the evidence, had been furnished McKinley by Gray. After singing at the school house for a time, the party removed to a branch

some distance therefrom. The whiskey gave out and appellant and Ballard went for some more. Ballard stopped at the school house while the appellant went to the house of Gray, obtained the whiskey and returned. Gray followed the appellant to the school house where he met Ballard. Appellant then joined the other boys who were in the branch, leaving Gray and Ballard in company with each other. Appellant reported to the other boys that he left Ballard in company with a woman and said nothing to them about the presence of Gray. The homicide took place at a point about 300 yards from the school house to which, according to the testimony, Gray and Ballard had gone together.

Appellant testified in his own behalf. From his testimony it appears that Paul Keith, Ottis Ballard, Aubrey Smith, and others were in the habit of singing and drinking whiskey whenever it could be obtained. On the night of the homicide they were engaged in this occupation. One of the parties suggested that they needed more whiskey. Appellant said he would get it but wanted someone to go with him, and Ballard volunteered to accompany him. Upon reaching the school house, Ballard was requested to wait as the person from whom appellant was getting the whiskey expected him to be alone. Appellant went to the home of Gray, where he saw Burl Kemp. He was told by Kemp that Gray had company whereupon he returned to the school house. Ballard suggested that the appellant go again for the whiskey. He then returned to Gray's house, got a small bottle of whiskey and told Gray that Ballard was at the school house. Appellant soon after returned to the school house. Gray followed him and engaged in a conversation with Ballard. Gray whispered to the appellant to keep the other boys where they were singing. Appellant went away, leaving Ballard in company with Gray. Upon joining his companions, appellant told them that Ballard was with a girl. After waiting for a while for Ballard to return, the remainder of the party went to their homes. On the following morning the father of Ballard made inquiry of the appellant and was told that Ottis Ballard was left by the appellant in company with a woman at the school house.

Appellant was arrested and placed in jail. He was later taken to a place where blood was discovered. He said he thought that the officers had put the blood and hair there in order to entrap him into making some kind of a statement; that he supposed that the blood was a ruse to cover the departure of Ballard on his way to leave the country. According to the appellant, he had been told by Paul Keith that Gray had proposed to give the

appellant and Keith $100.00 each if they would contrive to give Gray an opportunity to talk to Ballard to the end that Ballard might be persuaded to go to South America and that appellant and Keith would accompany him. Appellant said that he did not know at the time that Ballard had been killed and had no information that Gray intended to kill him; that he had no idea that Gray would do so or that he would harm him in any way. He believed that Gray's sole purpose was to persuade Ballard to leave the country and furnish the means of doing so. He said also that Keith had told him that there was no possibility of Gray injuring Ballard; that such must have been foreign to his purpose because his object was to avoid trouble, as it was already threatening him, rather than to get into more.

In the written confession which was introduced by the State, Gray said that Paul Keith and George McKinley had come to his house and told him that Ottis Ballard had said that if Gray would give him $100.00 more, he would leave and go to South America and not appear in court against him in the burglary case which was pending, and that they further said that if he would give each of them $100.00, they would accompany Ballard to South America and guarantee that he went there; that Keith said that both he and Ottis Ballard realized that they would go to the penitentiary and that they would prefer to go to South America.

It was further stated in the confession that appellant had stated that they could arrange for Gray to talk to Ballard and later appellant came to Gray and told him that the arrangement could be made; that Ballard was at the school-house. Upon the departure of the appellant, Gray went to the school-house where he found the appellant, and Ballard, and heard the other boys singing some distance away; that after talking to Ballard for a while and observing other people coming, he suggested that they walk into the woods, which they did, some 200 yards distant.

A part of the confession of Gray introduced by the appellant was to the effect that while he and Ballard were talking together, Kemp came up and struck Ballard over the head with a piece of iron, killing him; that Gray protested and undertook to prevent it, but the blow was so quickly inflicted that he was unable to prevent it. The State then introduced other parts of the confession showing that Gray and Kemp disposed of the body of the deceased by hiding it in the water some distance away.

Gray had been convicted of the murder of Ballard, and the

facts touching his case are stated in the opinion in the case, which opinion has not yet been reported.

The written statement of the appellant was introduced in evidence, partly by the appellant and partly by the State. The initiative was taken by the State. In the part of the statement introduced by the appellant, he stated that Paul Keith told him that Gray had offered them $100.00 each if they would get Ballard out where he could talk to him, and stated in substance that his conduct in bringing about the meeting of Ballard and Gray was in pursuance of that agreement.

A controverted point is whether the appellant possessed knowledge of the intent of Gray to murder the deceased. To meet the burden of the State upon this question, appellant insists that the evidence is insufficient. In Gray's confession introduced in evidence, such knowledge on the part of the appellant is at least inferentially negatived, due to the fact that in his confession Gray said that his arrangement with the appellant was that the interview between Ballard and Gray was to further the design of Gray to have Ballard absent himself from Gray's trial, it being the understanding between Gray and appellant that Keith and the appellant, in consideration of $100.00 each paid by Gray, would facilitate the departure of Ballard and accompany him to South America. Moreover, in Gray's confession, introduced by the State, he disclaims any intent to murder and insists that against his protest the murder was committed by Kemp. It was essential that the State prove Gray's guilt of the murder as a predicate for the conviction of the appellant as an accomplice to the murder. As one of the means of effecting this, Gray's confession was used by the State. It was the right of the appellant, as an element of defense, to negative Gray's guilt. Gray's confession, therefore, could only be used by the State to show the guilt of Gray. If the State, by the confession, in its efforts to show Gray's guilt, made proof which threw a doubt upon Gray's guilt of murder, this evidence being before the jury, was available to them upon the cardinal issue of the guilt or innocence of the appellant. See Bishop's New Crim. Proc., Vol. 3, Sec. 7; Bishop's New Crim. Law, Vol. 1, Sec. 667. The State having introduced Gray's confession as one of the means of convicting the appellant, was bound by that part of the confession introduced by it so far as it was exculpatory of Gray, unless the exculpatory part was disproved. See Pratt v. State, 53 Texas Crim. Rep.

281; Pharr v. State, 7 Texas Crim. App., 472; Combs v. State, 52 Texas Crim. Rep. 613.

In instructing the jury the court, in its charge, embraced this paragraph:

"In this case there has been evidence admitted before you of statement signed by Clem Gray. * * * This testimony was admitted before you for your consideration in passing on the guilt of Clem Gray, and you cannot consider it for any other purpose and it is limited to your consideration, solely and exclusively, in passing upon the question as to *the guilt or innocence of Clem Gray and you cannot consider it for any other purpose.*"

Appellant excepted to the charge in the following language: " * * * because the court fails to charge the jury that where admissions and confessions are introduced in evidence by the State that such admissions and confessions are to be considered as a whole, and that where such admissions or confessions contain exculpatory statements that the State is bound by such statements unless the truth of such statements are proven to be untrue."

The appellant's confession was introduced in evidence, partly by the State and partly by the accused, in which confession he admitted that he had been instrumental in arranging an interview between Gray and the deceased on the night that Ballard was killed, and in which he also said that his action was in ignorance of any intent on the part of Gray to injure Ballard, but was upon the belief by the appellant that Gray's purpose was confined to an effort to carry out the agreement to persuade Ballard to leave the country. Ordinarily, when the State introduces a confession of accused containing exculpatory statements, it is incumbent upon the court to instruct the jury that the exculpatory statements are regarded as true unless disproved. Maxey v. State, 58 Texas Crim. Rep., 121; Winkler v. State, 58 Texas Crim. Rep., 568; Jackson v. State, 55 Texas Crim. Rep., 86; Gaines v. State, 58 Texas Crim. Rep., 639; Banks v. State, 56 Texas Crim. Rep., 265. This rule, however, has been relaxed in a case where the accused on trial testifies and his testimony before the jury is in accord with the exculpatory features of his confession, and his defensive theory arising from his testimony and coinciding with the exculpatory theory advanced in the confession is fairly submitted to the jury. See Casey v. State, 54 Texas Crim. Rep. 584.

The instruction given the jury, however, touching Gray's

confession was calculated to lead the jury to understand that the exculpatory statements therein as to Gray's guilt could not be considered for any purpose favorable to the appellant. Whether the exception to the charge which we have quoted was sufficient to direct the court's attention to this fault in its charge, or whether in connection with the special charge requested and refused, it would be sufficient to require a reversal of the judgment on the question of practice is a matter of doubt. They are mentioned, however, in connection with what is conceived to be a fundamental weakness in the case, namely, the want of cogent testimony to establish the appellant's knowledge of Gray's intent to kill Ballard.

So far as we are able to comprehend the evidence, all that is affirmative in the record is contrary to the State's theory that appellant knew that Gray intended to kill Ballard or that appellant's connection in bringing Gray and Ballard together was upon other motive or information than that stated in the confession of Gray, in the confession of the appellant and in his testimony. It is to be noted that in the testimony introduced by the State and the appellant it is made to appear that appellant's reason for bringing Gray and Ballard together upon the occasion of Ballard's death was the information which the appellant had received from Paul Keith to the effect that Gray had stated that he would give to both appellant and Keith $100.00 each if they would arrange a meeting whereby Gray could talk to Ballard and induce him to go to South America with Keith and the appellant. We find in the record no denial by Keith of this alleged fact; nor do we find any reason given for the failure to produce Keith as a witness.

It is the thory of the State that while the evidence is affirmative that the appellant had no knowledge of Gray's intention to kill the deceased, still the circumstances warranted the jury, tested by the principles and rules of circumstantial evidence, in the inference that the appellant did have such knowledge. This inference is in contravention of the claim that Gray had told Keith that he would give Keith and the appellant $100.00 each if they would arrange a meeting between Gray and Ballard and would accompany Ballard to South America. The State having put this evidence in the record and the appellant also having put it in, it would have been pertinent that the State produce Keith as a witness to the end that the jury might determine his version of the affair. See Wilkie v. State, 83 Texas

Crim. Rep. 490; Taylor v. State, 87 Texas Crim. Rep. 334, see p. 337; Davis v. State, 89 Texas Crim. Rep 411, see p. 415.

In a case of circumsantial evidence, all available avenues likely to reveal the truth should be explored. The failure of a party upon whom rests the burden of proof to make use of testimony shown by the record to be important and not shown to be unobtainable is to be given weight in favor of the opposing party. Entertaining as we do what is deemed a well-founded doubt as to whether the evidence which points to the knowledge on the part of the appellant of the murderous intention of Gray, is of a character as excludes every reasonable hypothesis arising from the evidence save that of guilt, or such as to create to a moral certainty of essential criminating fact, and taking into account the charge of the court to which we have adverted in effect withdrawing from the jury any probative force in favor of the appellant of the exculpatory declarations of Gray introduced by the State, and the refusal of the special charge mentioned, we are constrained to apply in behalf of the accused the force of such doubt and order a reversal of the judgment. It is so ordered.

*Reversed and remanded.*

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—We have carefully considered the question as to whether the evidence was cogent enough to show that this appellant, prior to the murder of Ottis Ballard, had advised or encouraged Clem Gray to commit said murder, or that appellant furnished aid of any kind to said Gray for the purpose of assisting him in the execution of said crime. To sustain the correctness of our conclusion that it is of such force, we present a brief summary of the facts.

That appellant lured Ballard to a lonely place in pursuance of an agreement so to do; that he then informed Gray that Ballard was at said place; that he later kept Ballard there until Gray came; that he then left them there together and prevented other parties from going to where Gray and deceased were, and made false statements then and thereafter; that he did these things for a consideration of $200.00 to be paid by Gray,— $100.00 to appellant and $100.00 to his co-defendant Keith; that the purpose for which he brought about the meeting between Gray and deceased, as admitted by appellant when a witness herein, was illegal, i. e., that Gray might induce deceased to leave the country and not appear as a witness against him in

a felony case then pending; that appellant saw Gray and deceased leaving the spot where he had brought them together, and concealed their identity by a false statement; that deceased was slain by Gray that night not far from where appellant brought them together; that appellant repeated his false statements the next day; that he looked lightly upon the blood of deceased on the ground where he was killed and where his body had been dragged and spoke jestingly of said evidence of violence; that the size of the town where all the parties lived and these things occurred, was such as to make absurd the proposition that appellant believed that Gray was willing to give $200.00 to parties whose only consideration for same was merely to bring about a meeting between himself and deceased that they might have a conversation;—these and other facts seem without dispute in the record.

In the face of all these facts appellant testified that his only purpose in what he did was to bring deceased to where Gray could talk to him in order to obtain his part of the $200.00 offered by Gray to appellant and Keith if they could effect such meeting. The weight of the testimony above recited was for the jury. Nothing supported appellant's claim save his own testimony. The jury had a right to refuse to accept same. Conceding that Gray's purpose was to rid himself of the testimony of Ballard,—by killing him if necessary, and that he accomplished said purpose by slaying deceased, we must concede further under this record that the bringing of Gray and Ballard together on the fatal night, and his preventing the intrusion upon them of other persons, aided Gray in the accomplishment of the crime of murder—in the execution of his purpose. This, then, in order to fully meet the law as to an accomplice, would only leave for solution by the jury the issue as to appellant's purpose. From the whole record we conclude the jury justified in their verdict expressive of their belief that his purpose was to aid Gray in bringing about the death of Ballard.

A careful review of the record leads us to believe ourselves mistaken in any view that the State introduced that part of the appellant's written confession which contained exculpatory statements. All of said confession was offered, parts by the State and parts by appellant, and apparently some one on the trial marked thereon those parts so respectively introduced. That part which contains the exculpatory statements referred to in our original opinion, was introduced by the appellant. No such statements anywhere appear in those parts offered by the State. Reversal was ordered in the original opinion because of the

supposed error of the refusal of the trial court to charge on the duty of the State in regard to proving untrue exculpatory parts of said confession asserted by us to have been introduced by the State. Now recognizing ourselves in error in this conclusion and believing the evidence sufficient, necessitates the granting of the State's motion for rehearing, the setting aside of the order of reversal, and that we now direct an affirmance of the case, which is accordingly so ordered.

*Affirmed.*

Morrow, P. J., is of opinion the facts are insufficient and for that reason dissents from the affirmance.