SYLVIA REDMAN V. STATE

No. 27,854. December 14, 1955.

Rehearing Denied January 25, 1956
Second Motion for Rehearing Denied
March 7, 1956.

*Clyde* and *Barnes,* and *Truman Power,* of Fort Worth, for appellant.

*Howard M. Fender,* Criminal District Attorney, *Randell C. Riley, Conrad Florence,* Assistants Criminal District Attorney, Fort Worth, and *Leon Douglas,* State's Attorney, Austin, for the state.

BELCHER, Judge.

The offense is murder by attempted abortion; the punishment, confinement in the penitentiary for four years.

The state's testimony shows that the police identified a body as being that of Betty Ledel at a hospital and then went directly to appellant's clinic where appellant told them that Betty Ledel was removed from her clinic a short time before their arrival.

Homicide Detective Howerton testified that during his investigation and prior to the arrest of appellant that "We asked her (appellant) * * * what the purpose of Mrs. Ledel's visit was at the place and she said she had come to her some weeks prior to that — she thought she was pregnant and wanted something done about it; didn't want to have a child, and I asked her what occurred, and she said that she had inserted an instrument in her womb and injected air into her womb and I asked her where it occurred. * * * She showed me the table that the woman was lying on, and that after she had injected the air into her womb with the instrument she became choky, couldn't get her breath. * * * and she called an ambulance. I asked her what she did with the instruments she used in this case * * * and (she) carried us to a garbage can where she had placed the instruments; she picked the lid up from the garbage can and I removed the instruments from the garbage can that she said she had used on this occasion." These instruments were identified and shown to be a pair of snips, a cannula, a syringe, and a speculum.

Witness Howerton further testified on cross-examination that appellant told him that the deceased thought she was pregnant, visited her on two or three occasions about ten days apart, and that if the the deceased was pregnant, that she, appellant, didn't know it.

Dr. Fitzwilliam testified that he performed an autopsy on the body of the deceased which disclosed that the uterus was enlarged, filled with tissue of pregnancy, contained a small, live and normal embryo, which showed a six or seven week pregnancy; that he found evidence of air in the veins around the uterus, the heart, and in the veins and arteries leading to the brain; that the injection of air into the uterus of a pregnant woman would be highly dangerous and would likely cause a premature birth, and that the embryo here would probably have been expelled if the death of the deceased had not occurred, and that in his opinion air embolism caused deceased's death. On cross-examination, Dr. Fitzwilliam testified that the embryo appeared normal, but could have been dead for a few hours; and that there are no positive outward signs of pregnancy at six or seven weeks known to medical science.

The written confession of the appellant was introduced in evidence and contained the following: "* * * About the 8th of October, 1954, a girl named Betty Ladel came to see me. She told me she thought she was pregnant. About a week over her time. And asked me if I could help her get rid of the baby. I told her the danger of everything and she said she was not afraid, I told her I would rather her to go somewhere else and have the baby stopped in twenty four hours, because my work is slow. I do it by shooting a little air up into the womb. (uterus) By going through the cervix into the uterus, where the embryo is carried. She told me she wanted me to do it. * * * The first day she came to me, I shot a little air up into her uterus or womb. I used a syringe for air that's laying there on your desk, Mr. Cochran. I used a female speculum that's laying there too, Mr. Cochran, to open her vagina. I didn't know for sure she was pregnant. I have felt enough of them up inside the vagina to tell. After I shot the air up into her, I told her to come back every other day. She came back. Each time she came to see me, I pumped a little more air into her womb or uterus. Asking her if she could feel it. Sometimes she'd say, 'I do', and sometimes she would say 'I don't feel it'. Yesterday morning, which was October 19, 1954, she came back to see me; she came in and I took her upstairs. I laid her on a table used for females. * * * Then I inserted the speculum in her vagina to open it up, and

then I put the cannula to the mouth of uterus—it is the cannula that I am holding here, Mr. Cochran, to the mouth of the uterus then I gave her about five syringes full of air through the cannula into the uterus. I asked her if she could feel it and she said not very much. And she looked up at me and said I feel choky, and then she passed out. I used artificial respiration. I picked her up in my arms and laid her on the floor. And I slung water at her to try to revive her, and then I had a lady downstairs to call an ambulance. The ambulance came and got her and took her to Harris Hospital. After this happened I called a friend and asked her what to do and she said throw all that stuff away. So I went upstairs to get the instruments that I had used, and I had just come downstairs when Mr. Howerton and Mr. Armstrong and another detective walked in. I told them I'd be with them in a minute and I kinda hid the instruments that I had used on Betty Ladel behind me, and I stepped into the back and put the instruments in a garbage can. Then I came back out to talk to Mr. Howerton and I admitted to him what I had done and he asked me what I had used on Betty Ladel, and I took him out (to) the garbage can and showed him exactly where I had hidden them and what I had used. He asked me if I had performed an abortion on her and I told him no, but I wasn't telling him the truth. And I gave these instruments to Mr. Howerton and Mr. Armstrong and the other detective. After she had told me that she felt choky, and after I laid her on the floor, I noticed she was bleeding from the vagina."

Appellant testifying in her own behalf stated that the deceased came to her about fourteen days before her death, and was run down physically, worried, and thought she was pregnant; that she examined her, found no indication of pregnancy, determined that she had a misplaced uterus for which she gave her about eight treatments by injecting air into the uterus which she said was the common method used by naturopaths for treating a misplaced uterus; that she told the deceased that air injections were dangerous to pregnant women and that if she was pregnant to go to another place, and that the deceased replied that she was not afraid. She testified that she hid the instruments at the suggestion of a friend. Appellant admitted, on cross examination, that she voluntarily made and signed the statement introduced by the state, but testified that several of the matters contained therein were incorrect, that is, that the deceased did not "ask me if I could help her get rid of the baby" as therein set out, and the statement therein that she was not telling Howerton the truth when she told him that she had not performed an abortion on the deceased was incorrect because

her statement about not telling him the truth referred to the money paid her by the deceased for treatments.

Drs. Bletner and Walker, naturopaths, testified that the injection of air was an accepted practice among naturopaths for treating a misplaced uterus, and that such treatment would not likely cause an abortion.

It was shown that the appellant had a license to practice naturopathy.

Appellant's motion for an instructed verdict on the ground that the state had failed to disprove the exculpatory portion of her confession which it had introduced in evidence, to wit: "I didn't know for sure that she was pregnant * * * and she didn't feel pregnant" cannot be sustained because the appellant's testimony on the trial is in accord with said statements and the theory advanced in such statements and in her testimony was fairly submitted to the jury in the charge of the court. Casey v. State, 54 Tex. Cr. R. 584, 113 S. W. 534; McKinley v. State, 104 Tex. Cr. R. 65, 282 S. W. 600; Otts v. State, 135 Tex. Cr. R. 28, 116 S. W. 2d 1084; Treadway v. State, 150 Tex. Cr. R. 271, 200 S. W. 2d 199; Branch's Ann. P. C., p. 45, Sec. 73.

Appellant contends that there was no proof showing the intent of the appellant to produce an abortion.

The statements of appellant, in her written confession introduced in evidence, that the deceased asked her to help get rid of the baby, that she told her of the danger and that her work was slow, followed by at least eight treatments, together with other facts and circumstances in evidence, support the conclusion that the appellant intended to produce an abortion upon the deceased.

Appellant contends that the state failed to prove that the deceased was pregnant with a live embryo at the time of the act here charged, and further failed to show that the means used by the appellant was calculated to produce an abortion, and also failed to show that any act of the appellant caused the death of the deceased.

We conclude that the evidence offered by the state was sufficient to warrant the jury in resolving these issues of fact against the appellant.

In the absence of an objection to the failure of the court to charge on circumstantial evidence or a specially requested charge embracing the same duly presented, appellant's contention in her brief that such charge should have been given does not reflect error.

We find the evidence sufficient to sustain the conviction, and no reversible error appearing, the judgment is affirmed.

Opinion approved by the court.

### ON APPELLANT'S MOTION FOR REHEARING

DAVIDSON, Judge.

Appellant insists that a proper exception was reserved to the failure of the trial court to charge upon circumstantial evidence, and we erred in concluding to the contrary.

We find in the record what is denominated as "Defendant's Objections to the Court's Charge," in which appellant did except to the charge of the court for failing to charge on the law of circumstantial evidence. We do not find, however, that those objections were presented to or were passed upon by the trial court. There is an entire absence of any showing to that effect.

In order to be considered, objections to the court's charge must show that they were presented to the trial judge and exceptions reserved. Whitby v. State, 155 Tex. Cr. R. 192, 233 S. W. 2d 141.

Believing that a correct conclusion was reached originally, the motion for rehearing is overruled.

### ON APPELLANT'S SECOND MOTION FOR REHEARING

MORRISON, Presiding Judge.

A supplemental transcript has been filed for the purpose of showing that appellant excepted to the charge.

Without deciding whether or not the point was properly reserved, we have decided to consider the attack upon the charge because of the omission of an instruction on circumstantial evidence.

As will be seen from a reference to the original opinion, the arresting officers were told by the appellant that the deceased had come to her saying that she was pregnant and did not want the child, that the appellant had inserted an instrument into the deceased's womb and injected air therein and after the deceased had become faint and had been carried away in an ambulance she, the appellant, had hidden the instruments. It was the finding of these instruments where the appellant told the officers that she had hidden them that made the above testimony admissible under the terms of Article 727, V.A.C.C.P.

Appellant's written confession was also introduced in evidence in which she described the method which she employed in performing abortions, told how she had employed this method upon the body of the deceased and then told how the deceased "passed out" following the application of her method.

The doctor who performed the autopsy upon the deceased testified that the deceased was pregnant and that the method of air injections which the appellant had confessed she used, in his professional opinion, had caused the death of the deceased.

The testimony set forth did not make this such a case as would require the giving of a charge on circumstantial evidence.

Remaining convinced that we properly disposed of this cause originally, appellant's second motion for rehearing is overruled.