**Robert Vernon BRUCE, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 39528.**

Court of Criminal Appeals of Texas.

April 27, 1966.

Rehearing Denied June 1, 1966.

Charles W. Tessmer, Emmett Colvin, Jr., Dallas, for appellant.

Henry Wade, Dist. Atty., Charles Caperton, Tom F. Reese and W. John Allison, Jr., Asst. Dist. Attys., Dallas and Leon B. Douglas, State's Atty., Austin, for the State.

BELCHER, Commissioner.

The appellant was convicted of the offense of murder with malice, the jury assessing his penalty at life in the penitentiary.

The summary of the evidence in appellant's brief fairly presents the facts and is substantially as follows:

The daughter of the appellant, aged 12, at the time of the shooting, lived with her parents, the appellant and his now deceased wife. The daughter testified that on December 22, 1964, the morning of the shooting, she, her mother, and the appellant only were in the house; that on the previous night, her father was drinking when he came home and she heard her mother say that night to her father that if he did not stop drinking that she was going to have him put into the hospital; that her mother and father never had any arguments; that she was awakened by hearing the shot fired; that her mother and father were talking that morning before she heard the shot, her father talking in a loud voice; that she heard her mother's voice but that her mother did not sound like she was mad or arguing; that she heard her father fussing about a

truck transaction that he had with some other people; that she heard appellant say the morning of the shooting that he was going to get on to those people that he had had truck transactions with, or words to that effect.

Officer Walker testified that he received a call to appellant's address on the morning of December 22, 1964; that, receiving no response to his knock, he entered and saw nothing in the living room, he turned toward the hall and bedroom and saw the appellant standing there in the room and the deceased on the floor; that he asked appellant what had happened, and that appellant, who was partially crying, said he did not know why he did it and that he, appellant, kept asking over and over again if she was dead and saying that he "did not mean to do it"; that he found the weapon on the shelf in the closet (presumably the hall closet); the weapon being admitted into evidence—a .22 calibre pistol; that the gun was found on the shelf and that the shelf was in the back of a closet; that the gun was lying on the right as you face the closet on the outside; that he was of the opinion that appellant had been drinking.

The cause of death, according to the pathologist, was a gunshot wound of the chest.

C. L. Sheffield, brother of the deceased, testified to the bad reputation of appellant as a peaceful and law-abiding citizen, and that in the spring of 1959, when he was staying with appellant without paying rent, appellant came and he was drinking and in an ensuing argument struck the deceased with his hand, knocking her to the floor.

The wife of Sheffield testified that on June 28, 1963, she called the home of appellant and upon appellant's answering the phone, she asked to speak to the deceased, and appellant stated, "Well, I just shot her." "* * * What shall I do?" "* * * Well, I think she is dead."

The owner of a sporting goods store, one Brantley, testified to selling appellant weapons and that on December 16, 1964, appellant purchased a pistol and box of ammunition; that on December 17, he returned the pistol and after accepting the pistol back he questioned the appellant and appellant stated that he "* * * drove around all afternoon—I was going to kill my wife with it" or something to that effect; he further testified that appellant said that he had talked himself out of it or something, threw the shells away, and said he was not going to do it.

The appellant, testifying in his own behalf, related certain difficulties he had been having with a trucking concern located in Houston, Texas; that on the morning in question, the matter was preying on his mind and he was discussing this with his wife, the deceased, the discussion being that which his daughter heard; that he had been drinking the prior evening; that as he discussed the Houston matter with his wife he became mad, jumped up, and said he was going to Houston to settle it; and he probably was talking in a loud voice at the time; that he was not mad at the deceased nor she at him; that he went to the closet to get his pistol (as people in the trucking business get pretty rough at times) and the deceased ran after him into the closet; that as he turned around they met head-on at the entrance of the closet, he having the gun in his hand; that he thought he jerked the gun back and away, but that the next thing he knew she had her hand on her chest, called his name, and fell to the floor face downward; that he then went to the telephone, stated that he had shot his wife, and asked the operator to send an ambulance; that his daughter came in at that time and he believed that is why they found him standing in the middle of the room; that he had no recollection of the telephone conversation testified to by Mrs. Sheffield; that he did not recall any conversation about shooting his wife, with witness Brantley; that he caused the trigger of the gun to be pulled; that he probably jerked it with his hand in trying to step aside in going around

the deceased as he met her coming into the closet.

The appellant's mother testified that appellant had some nervous problems and drinking problems; that he had never been convicted of a felony; that appellant had never hurt deceased nor any of the children; that appellant was ill in the Army and came out much worse, one of the doctors stating that he should not have been released when he was.

The appellant insists that the evidence is insufficient to support the conviction on the ground that the state, in making out its case in chief, proved exculpatory statements made by the appellant to officer Walker upon his arrival at the scene of the shooting which it did not disprove.

The appellant relies upon the following portion of the testimony of officer Walker as being exculpatory, to wit: "he (appellant) didn't mean to do it," that is, he did not mean to shoot the deceased.

The appellant testified on the trial and his testimony corresponds and is consistent with his alleged exculpatory statement, and the theory advanced in said statement and in his testimony was fairly submitted in the charge of the court to the jury.

■ The submission of the defensive theory raised by said statement and his testimony rendered inapplicable the general rule as to exculpatory statements. 31 Tex. Jur. (2) 697, Sec. 128; 1 Branch (2) 105, Sec. 95; Redman v. State, 162 Tex.Cr.R. 524, 287 S.W.2d 676; Stewart v. State, 168 Tex.Cr.R. 166, 324 S.W.2d 229.

It is observed that in submitting the case, among other instructions, the court charged the jury that they could not convict the appellant unless they found beyond a reasonable doubt that the killing of the deceased by the appellant, if he did, was with the specific intent to kill, or if they had a reasonable doubt thereof to find him not guilty.

The court also charged the jury that if they believed that the shooting, if any, was accidental or if they had a reasonable doubt thereof to acquit him.

Further, the court instructed the jury that if at the time of the shooting the appellant did not intend to kill the deceased, or if they had a reasonable doubt thereof, to find him not guilty.

There were no objections or requests regarding the court's charge.

■ The evidence is sufficient to support the conviction and no error appearing, the judgment is affirmed.

Opinion approved by the court.