John George POGUE, Appellant,

v.

The STATE of Texas, Appellee.

No. 44261.

Court of Criminal Appeals of Texas.

Nov. 16, 1971.

Rehearing Denied Jan. 18, 1972.

James L. Mitchell, Dallas, for appellant.

Henry Wade, Dist. Atty., and John B. Tolle and Robert T. Baskett, Asst. Dist. Attys., Dallas, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This is an appeal from a conviction for murder without malice where the punishment was assessed at 5 years.

The indictment charged that the appellant on or about March 13, 1969, did "voluntarily and with malice aforethought kill Dennis Wayne Wilder by shooting him with a gun."

Initially appellant challenges the sufficiency of the evidence to sustain the conviction. He advances the theory that the killing was either deliberate and with malice aforethought or was an accident, and that the evidence cannot be said to have raised the issue that the killing was intentional but without malice.

We note at the outset that appellant did not object to the court submitting the issue of murder without malice to the jury, nor does he explain how, if a reversal is grant-

ed, the appellant could be retried for murder with malice. See Galloway v. Beto, 5th Cir., 421 F.2d 284.

The evidence reflects that between midnight and 1 a. m. on March 13, 1969, the 19 year old, 5′ 10″ deceased parked his car in front of the appellant's Dallas residence, got out leaving the car door open, the lights on and the motor running. The appellant then came out of his house with a loaded rifle and confronted the deceased who was somewhere between appellant's house and the Dockins' house next door.

Jimmy Dockins heard a disturbance and his wife called the police. He testified he heard the angry voice of the appellant "yelling and hollering," that there was a gunshot and then appellant came to his door, asked him to call the police, stating he had caught a prowler. At the time the appellant was holding a gun on the deceased. When informed the police had been called the appellant "started jabbing at the boy with the barrel of the gun." He struck at the deceased's head but the deceased dodged only to be later knocked down. When the deceased got up the appellant pointed the rifle at the deceased's head and said, "God damn it, I ought to kill you." Dockins reported the appellant's voice was loud and angry, and the deceased pleaded with him (Dockins) to "stop him, he is crazy, he is going to kill me," that he had only been looking for a girl's house. Dockins then told the appellant "to leave the boy alone" as the police would soon be there. Dockins testified the deceased was unarmed, was using no threatening language or making any attack upon the appellant. He also revealed that as he stepped inside his house to get fully dressed he heard another shot. The appellant then appeared at his door and stated "he shot the boy accidentally."

Ruth Moore, another neighbor of the appellant, testified she heard the appellant loudly say, "God damn you, hold up your hands or I'll shoot you * * *". and then she heard a gunshot. Both Dockins and Moore stated they heard the appellant say,

"If you had done what I told you I wouldn't have shot you."

The pathologist testified the deceased had been shot in the back 20 inches from the top of his head and that the cause of death was "a gunshot wound to the left chest," that the bullet had ruptured a lung and then continued on to the heart.

Testifying in his own behalf the 42 year old, 6′ 2″, 230 pound appellant stated he was awakened by a car stopping in front of his house and he saw someone walk up his driveway; that his mother told him someone looked in her bedroom window and then he saw the deceased looking in a window of the Dockins' house. Appellant related he got a rifle and went out and hollered at the deceased to halt, that he was "hollering just as loud as I could yell" and that "I threatened to shoot him and I was all shook up * * *"; that while trying to keep the deceased away from him with the gun it discharged into the ground. He testified that after Dockins told him the police had been called he punched the deceased "in the back with the .22 and it don't have a trigger guard and when I punched him with it he must have been standing a little further away than I thought or something and it slid through my hands and triggered it." He claimed the shooting was an accident and not in self-defense. He acknowledged the deceased had his hands over his head at the time he was shot. Appellant admitted he used profanity and "was probably scared or excited" and later that he was "awfully scared" and he had heard the deceased say to Dockins "Get him off of me, he is crazy."

When the sufficiency of the evidence is challenged, this court is required to view the evidence in the light most favorable to the verdict. Jones v. State, Tex.Cr. App., 442 S.W.2d 698. The court having charged on the law of murder with malice, murder without malice, and the defense of accident, and the jury having decided from the facts before them that the killing was without malice, we conclude that the decision, under the circumstances presented, is

binding upon this court. Berry v. State, 143 Tex.Cr.R. 67, 157 S.W.2d 650.

■ Next appellant contends the court erred in refusing to affirmatively charge the jury on defense of accident and apply the law to the facts.

The court charged the jury that:

"You are instructed that no act done by accident is an offense against the law. Therefore, if you believe from the evidence beyond a reasonable doubt that the defendant killed the deceased but you further believe from the evidence, or have a reasonable doubt thereof, that the shooting was by the accidental discharge of the gun in the hands of defendant, you will find the defendant not guilty."

The charge is substantially the same as that set forth in McClung, Jury Charges for Texas Criminal Practice, Revised Ed., 1967, p. 175; Erisman, Reversible Error in Texas Criminal Cases, Sec. 679, pp. 802–803; 1 Branch's Ann.P.C., 2d ed., Sec. 67.3, p. 62; Willson's Criminal Forms, 7th Ed., Sec. 3566, p. 574. It is clear that the court did apply the law to the facts and that appellant's contention that the court only abstractly charged on the law is without merit.

■ Appellant complains of the insufficiency of the court's charge on exculpatory statements offered into evidence by the State, but fails to point out any insufficiency. The charge given fairly tracks the one recommended in Willson's Criminal Forms, 7th ed., Sec. 3581.

Further, it would appear the charge was far more favorable to the appellant than was absolutely necessary.

Appellant testified and his testimony was consistent with the alleged exculpatory statements and the theory advanced in such statements and his testimony was fairly submitted to the jury in the court's instructions.

In Bruce v. State, Tex.Cr.App., 402 S.W.2d 919, 921, this court said:

"The submission of the defensive theory raised by said statement and his testimony rendered inapplicable the general rule as to exculpatory statements."

■ And it is not reversible error to fail to charge on exculpatory statements introduced by the State where the accused testifies to substantially the same facts as in the exculpatory statements and the defensive theory (such as accident in the instant case) is adequately presented to the jury in the court's charge. Rios v. State, 162 Tex. Cr.R. 609, 288 S.W.2d 77; Stewart v. State, 168 Tex.Cr.R. 166, 324 S.W.2d 228, cert. den. 363 U.S. 815, 80 S.Ct. 1253, 4 L.Ed.2d 1155; Grant v. State, Tex.Cr.App., 472 S. W.2d 531.

■ For the same reasons set out above, we find no merit in appellant's claim that the court erred in failing to grant his motion for instructed verdict because the State failed to disprove the exculpatory statements offered by the State. Redman v. State, 162 Tex.Cr.R. 524, 287 S.W.2d 676; Madden v. State, 171 Tex.Cr.R. 80, 344 S.W.2d 690.

■ Appellant complains that the prosecutor's argument was inflammatory, prejudicial when he misquoted the record by arguing at the guilt stage of the trial that the appellant had told the investigating officer he had been "in trial on an assault charge the very day" of the homicide.

On cross-examination of Officer Davis who arrived on the scene shortly after the shooting, appellant's counsel asked what the appellant had told the officer-witness. The witness answered, "He told me that he saw the car pull up out in front. He said that he had been on a previous trial on some kind of assault charge and he thought possibly that this might have been the gentleman coming to his house and maybe to do him some harm and he said he could see it wasn't him."

The record on re-direct examination reflects the following:

"Q. You mentioned him having been to some sort of assault trial or what was it?

"A. Well, it was either simple assault or aggravated assault charge that he had been in court that evening on.

"Q. Did you—did he say what position he was in court, whether he was the one that was being tried?

"A. I don't recall, sir."

On cross-examination the appellant was asked:

"Q. I believe you told the officers that you had been to a trial earlier that night, is that right?

"A. Yes, sir.

"Q. Whose trial was that?"

Upon objection the question was withdrawn.

It would thus appear that while the prosecutor's argument may not have been exactly accurate, as to the facts, we perceive no reversible error in light of the court's written instructions and frequent admonishments to the jury during the trial that argument of counsel was not evidence and was not to be considered as such.

■ Further, appellant complains of prosecutional argument that the "defense sounds kind of like a courthouse defense more than the truth to me, but I am not going to attack Mr. Mitchell's (defense counsel) character in this cause * * *."

Although the objection was overruled the court instructed the jury that " * * * argument of counsel in a case is not evidence. They sometimes get a little bit out of the record and so you go by what you heard on the witness stand and not what anybody argued in the case." And later the court instructed the jury to disregard any argument not supported by the evidence.

The argument was improper and should not have been made. The appellant's defense was accident which was in accordance with statements made shortly after the event in question. The defense was not thus a "courthouse defense." In light of the court's instruction, we perceive no reversible error.

■ Appellant also complains of the prosecutor's argument in asking if the jury was interested in doing their bit about stemming a crime wave.

After the objection was overruled the prosecutor argued:

"The law ςontemplates your interest in convicting people who have committed crimes in your county, so I appeal to you to rise to the occasion and to go out and find this man guilty of the crime of murder with malice. When you do it then I will say that justice would have been had in Dallas County. I thank you very much for your attention."

The argument when considered as a whole appears to be a proper plea for law enforcement.

■ At the penalty stage of the proceedings it was shown that appellant had been convicted of aggravated assault upon a female. In argument the prosecutor referred to the conviction as that of "beating up a woman." The objection was overruled. Appellant's counsel then argued there was no evidence in the record that appellant had "beat up a woman" and that "aggravated assault can consist of frowning at her." After several objections the court stated, "That is out of the record and you are out of the record. Both of you were."

The circumstances presented do not reflect reversible error.

■ Lastly, appellant complains that officers Mell and Potts were allowed to testify at the penalty stage of the trial that his reputation for being a peaceful and law abiding citizen was bad when they were not

qualified to do so. This complaint is primarily based on the fact that neither officer knew appellant or had heard the appellant's reputation discussed prior to the date of the alleged offense. A similar contention was advanced, discussed at length and overruled in Frison and Watts v. State, Tex.Cr.App., 473 S.W.2d 479. See also Broadway v. State, Tex.Cr.App., 418 S.W.2d 679; Chamberlain v. State, Tex.Cr.App., 453 S.W.2d 490. Both officers were shown to have discussed appellant's reputation with police officers and Mell had also discussed such reputation with civilians. There is nothing to show that such testimony was based solely upon the murder charge involved so as to render the testimony inadmissible. Wilson v. State, Tex.Cr.App., 434 S.W.2d 873; Martin v. State, Tex.Cr.App., 449 S.W.2d 257; Frison and Watts v. State, supra.

The contention is overruled.

The judgment is affirmed.