## AUDREY BERRY V. THE STATE.

No. 21780. Delivered January 7, 1942.

The opinion states the case.

*Dibrell, Mosheim & Campbell,* of Seguin, for appellant.

*Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The conviction is for murder with malice aforethought. The punishment assessed is confinement in the State penitentiary for a term of five years.

Appellant challenges the sufficiency of the evidence to justify and sustain his conviction for the offense of murder with malice aforethought.

The evidence adduced upon the trial, as reflected by the record, shows that appellant was employed by Albert Murphy as a clerk in a beer and cold drink stand located in the town of Seguin. On the night of January 25, 1941, the deceased and a number of negroes assembled at the beer tavern and there engaged in drinking and playing a game with cards known as "Coon Can." After midnight, the deceased ordered a bottle of beer for himself and a relative with whom he was sitting at a table. Appellant took two bottles of beer, placed them on the table at which the deceased and his kinsman were sitting, and then stood there for a few minutes. The deceased asked him what he was waiting for, to which appellant replied that he was waiting to get the money for the beer. An argument arose and some very uncomplimentary remarks were passed between them which precipitated a fight. Up to this point there seems to be no material contradiction in the testimony offered by the State and that presented by the defendant.

In his dying declaration the deceased said that he did not throw any beer bottle at appellant; that appellant cursed him and when he arose from his chair the appellant drew a pistol and before he could do anything appellant shot him in the abdomen; that they then clinched and tussled over the pistol; that during the struggle the pistol was fired twice, that one of the shots struck him in the shoulder and the other missed him.

The appellant's version of the affair is that when he waited at the table to get the money for the beer, the deceased cursed him and told him that he would show him who he was and picked up a beer bottle from the table and hurled it at him; that the bottle struck him on the shoulder and he then pulled his pistol; that as the deceased was coming at him he fired being afraid that the deceased would kill him or inflict serious

bodily injury upon him; that the deceased caught him and in the struggle the pistol was fired twice; that Albert Murphy, the proprietor of the place, and others interceded, took the pistol from him and separated them. After the difficulty was over, the deceased was first taken to a doctor's office and from there to a hospital where an operation was performed on him. He died on the 31st day of said month, about six days after having received the fatal injuries. The deceased was a large man; six feet or a little more in height and weighed 200 pounds while appellant was five feet six inches tall and weighed approximately 145 pounds. No prior ill will or animosity was shown to have existed between them.

With reference to the appellant's contention that the evidence is insufficient to justify and sustain his conviction for murder with malice, we make the following observation: If appellant shot the deceased without any cause other than a verbal provocation, it would be an unjustified killing and would be murder with malice unless adequate cause existed, and whether or not adequate cause existed, which means such a cause as would commonly produce in a person of ordinary temper that degree of anger, rage or sudden resentment as to render the mind incapable of cool reflection so as to bring it within the definition of murder without malice, is a question of fact to be determined by the jury under an appropriate instruction from the court. When the Legislature repealed the manslaughter statute, all statutes which specified certain acts as constituting adequate cause were also repealed; and the Legislature enacted Article 1257a, P. C., which permits the State or the defendant to offer testimony as to all the relevant facts and circumstances surrounding the killing, etc., for the purpose of permitting the jury to decide whether or not adequate cause existed. Hence this court is not authorized, in the absence of a statute, to say that this or that act constituted adequate cause, but the question is one for the jury to determine from all the relevant facts and circumstances introduced in evidence. In our opinion, the court adequately instructed the jury upon the law of murder with malice, on the law of murder without malice and on the law of self-defense, and the jury having decided from all the facts and circumstances before them that the killing was with malice, such a decision is binding upon this court. Hence we overrule appellant's contention that the evidence is insufficient to sustain his conviction of murder with malice aforethought. See Elsmore v. State, 132 Tex. Cr. R. 261.

Bill of Exception No. 1 is without merit.

By Bill of Exception No. 2 appellant complains of the action of the trial court in admitting in evidence deceased's purported dying declaration. Appellant objected thereto on the ground that the proper predicate had not been laid for its admission and for the further reason that the statements of the deceased were in response to questions propounded to him by the parties taking the dying declaration. The State, with a view of laying a predicate for the admission of said dying declaration, placed two witnesses on the stand, namely, Louis A. Zunker, a deputy sheriff who, on his direct examination, testified that he in company with the County Attorney, went to the hospital on the 27th day of January to see the deceased and get a statement from him; that the deceased told them that he knew he was approaching death; that he was conscious of it; that the deceased was of sound mind at the time; that he made the declaration voluntarily without being asked any questions; that Mr. Pape wrote it down exactly as deceased stated it; that the deceased then singned it and he (Zunker) and Miss Kypfer signed it as witnesses. On cross-examination it was shown that the witness testified at the examining trial relative to the predicate for the admission of the dying declaration as follows:

"I went in, saw him and asked him how he was feeling. * * * He replied that he didn't think he would make it, and then he began to tell us about the thing. Mr. Pape asked him if he didn't want to put it down in writing, and he said, 'Yes.' * * * Mr. Pape wrote it out with a pen or pencil. He told us that he only knew that fellow that shot him by sight. Mr. Pape asked him if it was Audrey Berry and he said, 'Yes'."

It is obvious from the foregoing statement of this witness that his testimony on the main trial was much more favorable to the State in laying the predicate for the admission of the purported dying declaration than at the examining trial. Whether the testimony of the witness as given at the examining trial or at this trial was correct was a matter to be settled by the jury.

Miss Kypfer, on direct examination by the State, testified upon the subject that when they walked in, one of them asked him (meaning deceased) how he was, and he replied that he wasn't doing so well; that he did not think he was going to make it. He said he did not believe he could live. He made a

statement which she signed as a witness. Mr. Pape asked deceased if he didn't want it written down and he said, 'Yes,' and Mr. Pape wrote it down. Hosia (deceased) said he knew he could not live. On cross-examination by appellant's counsel, she testified:

"Monday morning, when Mr. Pape and Mr. Zunger were there, I was in the room the whole time with them. Yes, I remember that Mr. Pape asked Hosia whether or not the person who shot him was Audrey Berry. I remember Mr. Pape said it was Audrey Berry and Hosia said, 'Yes.' Hosia had previously said that he just knew him as a stranger by sight; did not know who he was. * * * Mr. Pape asked Hosia whether or not the reason that Berry shot him was that Hosia had thrown some beer bottles at Berry."

On re-cross examination the witness testified:

"Mr. Pape did not have a typewriter with him. I don't remember that he used a typewriter that day."

The attending physician had theretofore testified that he told the deceased that a man who was shot as he was could not live. Thereupon the court admitted the dying declaration in evidence. At the conclusion of the evidence, appellant made a motion to strike it and requested that the jury be instructed not to consider it, which motion was overruled and appellant excepted.

It is apparent from the record that the State's witnesses, on cross-examination, contradicted, in some respects, their testimony given on direct examination relative to the establishment of a predicate for the admission in evidence of the purported dying declaration and in consequence thereof the trial court, by appropriate instruction, submitted the issue to the jury for their determination. The court correctly and adequately instructed the jury what facts the State was required to prove before the purported declaration could be considered by them; and unless the State had met these requirements they could not consider it for any purpose. It seems now to be the established rule in this State that when there is a conflict in the testimony relative to the laying of a predicate for the admission in evidence of a purported dying declaration, the same shall be submitted to the jury. In the case of Walker v. State, 88 Tex. Cr. R. 398, Judge Morrow, speaking for the court, said:

"When the evidence is conflicting, but sufficient if believed to establish the predicate, the practice of submitting the issue to the jury is pursued" (citing Taylor v. State, 38 Tex. Cr. R. 567, and other cases).

See also Kennamer v. State, 93 Tex. Cr. 430, 247 S. W. 560; Yarbrough v. State, 95 Tex. Cr. R. 36, 252 S. W. 1069. However, the record shows that appellant took the witness stand and admitted the killing but contended that he did so in self-defense; and that issue was also submitted to the jury by an appropriate instruction from the court.

What we have said in disposing of the foregoing complaints also disposes of the remaining bills of exception inasmuch as they, in substance, relate to the same subject-matter.

Finding no reversible error in the record, the judgment is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.